IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


UNITED STATES OF AMERICA,

                                                    Case No. 5:01cr15-RH
vs.                                                 Case No. 5:04cv249-RH/WCS

RAYMOND E. DAVIS,

        Defendant.

_____/


## REPORT AND RECOMMENDATION TO DENY § 2255 MOTION

        Pending is Defendant's second amended 28 U.S.C. § 2255 motion.  Doc. 58.

The Government filed a response with portions of the record, doc. 61, and Petitioner

filed a traverse in reply.  Doc 67.

## Procedural Background

        As summarized in the opinion on appeal:

        The indictment in this case charged appellant, in Count I, with possession
        of a machine gun in February 1997 in violation of 18 U.S.C. § § 922(o)
        and 924(a)(2), and, in Count II, with possession of a firearm by a
        convicted felon in violation of 18 U.S.C. § 922(g) and 924(a)(2).  Following
        arraignment, appellant moved to suppress the firearm and other evidence
        seized from his trailer by law enforcement officers.  The court held an
        evidentiary hearing on the motion and denied it.  Appellant thereafter
        entered a conditional plea of guilty to the charges; he now appeals.  He
        contends first that his convictions are invalid because, contrary to the

district court's ruling, the search of his trailer was not supported by probable cause and exigent circumstances.

Doc. 61-2 (on the electronic docket), pp. 1-2; *see also* doc. 51 (mandate issued January 15, 2003).[1]  As the Eleventh Circuit noted, a number of searches occurred.

> According to the record, Panama City Police Department (PCPD) officials were informed that a call received by the hotline for the Department of Children and Family Services (DCFS) indicated that appellant was holding captive in his trailer home a girl, age fifteen, to whom he was providing drugs and with whom he was having sexual intercourse.  The caller also reported that appellant possessed guns and explosives.  Two sets of PCPD officials went to appellant's trailer.  The first set of officers refused to enter without a warrant.  The second set of officers, including Agents Pitts and Lock of the PCPD, (1) went to appellant's residence three hours after the initial report was received, and (2) entered the residence without a warrant, fearing that the girl may be in physical danger.  Based on observations during the initial search, Pitts and Lock obtained and executed two search warrants and recovered ammunition from appellant's residence.  On the day after executing the second search warrant, PCPD officials were informed of a robbery progressing at appellant's residence.  Upon questioning the perpetrators and receiving information that the trailer home contained a concealed firearm, PCPD officials obtained a third search warrant and recovered a fully automatic weapon.[2]

doc. 61-2, pp. 2-3.

In his motion to suppress, Defendant challenged the initial warrantless entry into his home and the evidence obtained pursuant to the three separate search warrants.

---

[1] The Government supplied a copy of the opinion as Ex. A, filed as document 61-2. The opinion was also filed when the mandate was issued.  Doc. 51.  The document was not scanned at that time, and since the Government's exhibit is available on the electronic docket and was supplied to Defendant, the exhibit filed as document 61-2 will be referenced.  The opinion was also published.  United States v. Davis, 313 F.3d 1300 (11th Cir. 2002), *cert. denied*, 540 U.S. 827 (2003).

[2] The weapon recovered from the house was actually semiautomatic, believed to be the same fully automatic weapon charged in count one, altered to fire only in semiautomatic mode at some point after the video (supporting count one) was made. Doc. 28 (rearraignment transcript),  pp. 12-13.

Doc. 17, pp. 4-8.  Attached to the motion were the three applications and three search warrants issued.  Doc. 17, composite Exs. A-C.  The Government responded that the initial entry was justified by exigent circumstances and the subsequent searches were conducted pursuant to valid search warrants.  Doc. 21.  After a hearing, the court denied the motion to suppress.  Doc. 42 (transcript of hearing), pp. 130-140.  The guilty plea was conditional, "so that Raymond E. Davis, Jr. May appeal the denial of the motion to suppress."  Doc. 25 (notice of conditional plea); *see also* Doc. 28 (rearraignment transcript), pp. 2, 19.

On appeal, the Eleventh Circuit found it "unclear whether the district court properly applied the exigent circumstances exception to deny appellant's motion to suppress," commenting that it was "possible that the exigent circumstances exception did not apply to the initial search."  Doc. 61-2, pp. 6-9.  But even if the initial search was invalid, said the court, "the firearm, which was recovered pursuant to an independent source, i.e., the third warrant, was admissible because the causal link between the first set of searches and the final search was broken."  *Id.*, p. 9.  The court reasoned:

> Under the relevant inquiry, which should center on the validity of the third warrant, it appears that the warrant was valid.  Even if all of the facts regarding the initial entry and the two subsequent searches are deleted from the third warrant application, it includes sufficient facts to support probable cause that a crime, namely possession of a firearm, had been committed at appellant's residence.  For example, the warrant application clearly indicated that PCPD officials had been informed through a DCFS report that appellant, a convicted felon, was in possession of firearms.  It also state that the report that appellant possessed a firearm was confirmed by the two individuals, who were attempting to remove items from his trailer.
>
> Based on this information, the warrant was valid because the facts recited in the application established (1) a link between appellant and the illegal activity, possession of a gun, and (2) the veracity of the original informant,

whose information was confirmed by independent accounts of the
perpetrators of the robbery occurring on the next day.  Because probable
cause supported the third warrant, independent of the observations gained
from the allegedly illegal initial entry, the warrant was a legal, independent
source, which purged the seized evidence of any taint from the initial
entry.  In sum, the district court correctly denied appellant's motion to
suppress.

*Id.*, pp. 9-10 (citations omitted).

Defendant also challenged on appeal his sentencing enhancement under

U.S.S.G. § 4A1.1(d).  Doc. 61-2, pp. 10-15.  The claim was rejected.  *Id.*  Thus, the

judgment was affirmed.  Doc. 61-2.

Defendant filed a petition for rehearing dated December 19, 2002.  Doc. 61-4.

Counsel argued there that the court should not have relied on the "independent source"

ground to find that any taint had been purged from the third warrant as this issue had

not been litigated and the argument had been abandoned by the Government.  *Id.*, pp.

1-7.[3]

Counsel also argued that count one should be reversed, as it was based solely

on the videotape seen by officers executing the first warrant and seized pursuant to the

---

[3] The motion to suppress argued that the initial entry was illegal, and that any
evidence taken pursuant to the subsequent three warrants should be suppressed.  Doc.
17, pp. 4-8.  It was argued as to each of the warrants that the warrant was fruit of the
poisonous tree.  *Id.*, pp. 6-7.  As to the third warrant it was noted that the application
was "based in large part" on the information or evidence obtained earlier.  *Id.*, p. 7.  It
was further argued that therefore, in order to deny the motion, "[t]his Court must find
that an 'independent source' supports the issuance of the warrant, not tainted
information."  *Id.*, (citation omitted).  Defendant claimed that, if purged of tainted
information, the third warrant affidavit did not support probable cause, and supported
this claim by attaching a redacted version of the affidavit.  *Id.*, p. 8 and Ex. 2. The
Government did not address the warrants separately, but argued that the initial entry
was proper and the subsequent warrants were therefore lawful.  Doc. 21.  The
Government did not argue that the third warrant was supported by the independent
source information, standing alone.

second warrant, before the taint of the illegal entry was purged.  *Id.*, pp. 7-8.  Counsel

pointed out that *this* evidence, upon which count one rested, came into the possession

of the Government before any independent source had "cleansed the constitutional

taint."  *Id.*, p. 8.  Counsel argued: "There is no way to affirm the judgment as to Count I

without conclusively deciding the constitutionality of the entries and seizures prior to

issuance of the third search warrant."[4]  *Id.*

The court does not have a copy of the denial of rehearing, which was presumably

without opinion.  The mandate is document 51.  A petition for writ of certiorari was

denied without opinion.  Davis v. United States, 540 U.S. 827, 124 S.Ct. 49, 157

L.Ed.2d 50 (2003).

**Section 2255 Claims**

**Ground one**

Defendant claims in ground one that the Eleventh Circuit failed to dispose of the

issues on appeal, and he contends that this was a manifest injustice.  He contends also

that it will be a manifest injustice if this court fails to address his claims.  Doc. 55, p. 3

(A) (ground one); doc. 58, p. 3 (ground one).  As Defendant was previously advised, this

is not a separate ground for relief.  Doc. 57, p. 2 and n. 1.  Ground one is without merit.

---

[4] Videotapes were seized pursuant to the second warrant; only the firearm was
seized pursuant to the third warrant.  Doc. 17, p. 4.  This is confirmed by the actual
returns on the warrants.  *See* sealed exhibits for suppression hearing, and doc.  24,
exhibit and witness list for suppression hearing.  As noted *supra*, n. 2, the automatic
weapon charged in count one and the semiautomatic weapon found in the search of
Defendant's home were probably the same firearm, altered sometime after the video
was made.  Doc. 28, pp. 12-13.  That Defendant possessed the firearm when it was in
fully automatic mode was proven only by the video, not by the firearm seized in the third
search.

**Grounds two, three, and four, failure to resolve issues on appeal**

Grounds two, three, and four are interrelated.  Each is based on the fact that the Eleventh Circuit did not determine the validity of the initial entry without a warrant, the only issue raised on appeal, but affirmed on another basis, the independent source for the last search warrant.

Defendant asserts that his guilty plea was unlawfully induced with the understanding that the sole issue presented on appeal would be the issue decided on appeal.  Doc. 58, p. 3 (ground two).  He asserts a denial of due process and equal protection because the Government's only position throughout the litigation was that the initial warrantless home entry was reasonable, and the Eleventh Circuit did not rule on this dispositive issue.  *Id.*, p. 4 (ground three).  He asserts a denial of the right to appeal because the only issue was the warrantless entry into his home, and the Eleventh Circuit did not rule on this issue.  *Id.* (ground four).

The Government responds that Defendant's plea was conditioned on his right to appeal denial of the motion to suppress, he did appeal, and the court of appeals found that the evidence was properly admitted.  Doc. 61-1, p. 4.  The Government notes that a conditional plea simply preserves a general right to appeal; it does not "explore the niceties of Fourth Amendment jurisprudence."  *Id.*  It is argued that Defendant received the benefit of his bargain by taking an appeal.  *Id.*

The Government also contends that the claim that the court of appeals did not properly review the question of exigent circumstances is not cognizable under § 2255 because it does not challenge the actions of the district court.  *Id.*, p. 5.  It is also argued

that this does not state a claim of constitutional error, jurisdictional error, or a miscarriage of justice.  *Id.*

The Government also argues that Defendant's assertion in this court that the appellate court unfairly considered a theory abandoned by the Government was considered when the court denied Defendant's petition for rehearing.  *Id.*, p. 5.  Since this claim was already considered on appeal, it is argued that the claim is precluded from review here.  *Id.*, *citing* United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981).

In his traverse, Defendant argues that his "plea rested solely on the basis of whether or not the evidence was obtained legally or illegally," which "has not yet been resolved."  Doc. 67, p. 11.  He argues that because the Government waived the "independent source" argument, the appellate court denied due process and equal protection by considering it, reasoning that if he had waived a claim instead of the Government, his claim would not have been considered.  Doc. 67, pp. 12-15.

Defendant's claims do not entitle him to relief in this court.  The condition upon which Defendant's guilty plea was obtained, that he be permitted to take an appeal concerning the admissibility of the evidence against him, was fulfilled.  He presented his arguments on appeal and received a decision from the Eleventh Circuit.  There was no promise that the decision would be one with which Defendant would be satisfied.

Defendant is correct that the validity of the initial warrantless entry was not resolved on appeal.  The court noted the question was close and suggested exigent circumstances were lacking, but the court did not decide that question.  It then affirmed on a different ground.  Whether or not the Eleventh Circuit erred is not a matter that this

court may decide.  Nonetheless, it is noted that affirming on another ground is proper.  "Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action." J. E. Riley Inv. Co. v. Commissioner, 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940); *see also* CSX Transp., Inc. v. City of Garden City, 325 F.3d 1236, 1244 (11th Cir. 2003) (quoting this language, other citations omitted).  "In the review of judicial proceedings, the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); United States v. Compton, 82 F.3d 179, 184 (7th Cir. 1996) (quoting this language, finding that even if intervening case law called into question additional criminal history point under the United States Sentencing Guidelines, there was another basis for the extra point and affirming the judgment is appropriate on any basis supported by the record) (other citations omitted).

Defendant's argument that had he waived a claim at the trial level, he would have been precluded from raising the issue on appeal, is true but not helpful to his cause.  A different waiver rule applies to a party who seeks to disturb a judgment. *Cf.* Kearney v. J.P. King Auction Co., Inc., 265 F.3d 27, 41, n. 18 (1st Cir. 2001) (distinguishing the rule of Riley and Helvering, where a judgment is affirmed on an issue not argued but apparent in the record, from waiver, which "prevents an appellant from *overturning* the district court on the basis of an argument never presented to the district court, furthering considerations of judicial economy and basic fairness.") (citations omitted, emphasis added).

Finally, arguments raised on appeal cannot be reconsidered pursuant to § 2255. "The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000), *citing* Rowan, 663 F.2d at 1035. "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." 211 F.3d at 1343 (citation and footnote omitted). As the defendant there had "merely re-characterized his prior immunity claim [rejected on appeal] as a due process claim," and "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory," the § 2255 claim was properly rejected. *Id.*, (citation omitted). *See also*; United States v. Jordan, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case."). *Cf.* Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974) ("law of the case" doctrine did not preclude raising in § 2255 motion a claim decided on appeal where there had been an intervening change in law since the appeal).

Application of these well-established principles of law to this case is dispositive. There has not been an intervening change of law. The Eleventh Circuit affirmed, finding that the seizure of the firearm was proper based upon independent source evidence sufficient for probable cause. With respect to the videotape evidence, an issue not addressed by the Government, Defendant presented the argument on his motion for rehearing that the Eleventh Circuit could not affirm count one if it did not decide the legality of the first and second searches. Defendant pointed out that the videotape was acquired during those searches. The court denied rehearing. Whether or not this was

error is an issue this court cannot consider on a § 2255 motion.  For these reasons, grounds two, three, and four are without merit.

**Ground five, illegal seizure**

Ground five contains two parts, addressed in reverse order.  In ground five, part two, Defendant claims that the firearm in support of count two was illegally seized pursuant to the third warrant, which he argues was not purged of the taint from the previous wrongful entries.  Doc. 58, pp. 4(F)-4(G).  He claims that the Eleventh Circuit's ruling to the contrary was erroneous.  For the reasons set forth above, this claim was decided on appeal and should not be reconsidered under § 2255.

In ground five, part one, Defendant asserts that the videotape evidence in support of count one was illegally obtained.  *Id.*, p. 4(F).   As explained above, the claim was raised in the petition for rehearing and rejected by denial of rehearing.  While it is the more persuasive of Defendant's claims, it should not be relitigated under § 2255 for the reasons set forth above.

Further, as Defendant has already had a full and fair opportunity for litigation of his Fourth Amendment claim, he is not entitled to § 2255 post conviction relief based on the purported unconstitutional search and seizure.  Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) (announcing this limitation with respect to a state prisoner), and 428 U.S. at 507, n. 5, 96 S.Ct. at 3058, n. 5 (J. Brennan, dissenting) ("[t]o the extent the Court is rendering a constitutional holding, there is obviously no distinction between claims brought by state prisoners under 28 U.S.C. § 2254 and those brought by federal prisoners under 28 U.S.C. § 2255.").  *See also*, United States v. Ishmael, 343 F.3d 741, 742 (5th Cir. 2003), *cert. denied*, 540 U.S. 1204 (2004) (§ 2255

claim barred by <u>Stone</u>), *citing* <u>United States v. Cook</u>, 997 F.2d 1312, 1317 (10th Cir.1993) (finding it "clear that the [Supreme] Court intends for Fourth Amendment claims to be limited in § 2255 proceedings as they are limited in § 2254 proceedings – *i.e.*, to be addressed only if a defendant has not had a full and fair opportunity to raise the claims at trial and on direct appeal.").  Consequently, ground five is without merit.

**Ground six, ineffective assistance of counsel**

In ground six, Defendant asserts ineffective assistance of counsel.  He claims cumulative ineffectiveness in this court and on appeal, rendering the proceedings fundamentally unfair.  Doc. 58, p. 4(H).

Defendant faults trial counsel for failing to call a number of witnesses to testify at the hearing on the motion to suppress:  the alleged victim; the four PCPD officers who first arrived and thought a warrant would be necessary; PCPD Officer Pate, the officer (in the second group) who actually entered his home;[5] and DCFS Officials Shirley Morrow and Ruth Dayton.  *Id.*  These witnesses, Defendant argues, "were vital" and would have supported his position.  *Id.*  Defendant claims that counsel "should have made significant factual points" and should have objected to "inaccurate and erroneous" factual findings by the court.  *Id.*  He argues that "she affirmed the Judge[']s statements that she should have denied and argued against, that required proof beyond a reasonable doubt, but didn't because she was either intimidated by the Judge and/or simply deficient in performance."  *Id.*

---

[5] It is noted that Officer Pate was, at the time of the suppression hearing, on special assignment in Kosovo.  Doc. 42, p. 39.

Defendant also asserts that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on appeal, and failing to raise "substantial issues."  *Id.*, pp. 4(H) -4(I) (also citing doc. 52).  The issues appellate counsel should have presented, as identified in the memorandum, are those which Defendant claims trial counsel should have argued but did not.  Doc. 52, pp. 55-56 (pp. 100-101 on the electronic docket).

The Government responds that Defendant's allegations are conclusory and he has not alleged or shown prejudice by these purported errors.  Doc. 61-1, p. 6.  As he fails to show how the outcome of the suppression hearing might have been different based on testimony from additional witnesses or objections, it is argued, he has not shown prejudice required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In particular, Strickland said:  "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and must also "affirmatively prove prejudice."  Strickland, 466 U.S. at 690, 693-694, 104 S.Ct. at 2066-68.

Defendant responds by pointing out that the court would not consider his memorandum of law, and asserts that the Government's argument shows "[h]ere again is evidence of why this Court should allow the memorandum of law (Doc. 52) to stand."  Doc. 67, p. 18.[6]  He claims that he "thoroughly and adequately established all of his

---

[6] Defendant was directed to file an amended § 2255 motion.  He was advised that a memorandum was not encouraged and could not exceed 25 pages without prior leave of court.  Doc. 54.  Defendant was advised that he would have a chance to file additional argument after the Government responded.  *Id.*, p. 2 and n. 2.  Defendant

allegations," and demonstrated prejudice, in his memorandum.  *Id.*  He references

document 52 in general, though Defendant does not point to specific page numbers.  *Id.*


Document 52 is a lengthy § 2255 motion and a 58 page memorandum.  It was

rejected because it was not in proper form or length, and Defendant was ordered to

amend.  Doc. 54 (incorporated herein by reference).  While it is not proper to continue to

make reference to a document that was rejected as having been improper in form and

length, the relevant portions in the rejected memorandum do not help Defendant.  The

ineffective assistance of counsel claim is addressed at pages 46-55 of the

memorandum attached to document 52 (hereafter referenced as memo) (pages 91-103

on the electronic docket).  The pages include mostly boilerplate legal argument, with

some allegations and record references.  Defendant lists there a total of 19 people who

should have been called as witnesses.  Memo, p. 50 (p. 95).  In addition to the eight

witnesses identified in the second amended motion, Defendant identified eleven others:

Assistant State Attorney Pam Smoak, the neighbor who called the police about the

burglary; the two neighbors who said the victim arrived by cab; a neighbor walking by,

who told officers a girl was in the trailer; a neighbor who said Defendant left the trailer at

---

filed an amended § 2255 motion and request to file a memorandum in excess of 25
pages.  Docs. 55 and 56.  A "final order to amend § 2255 motion" was entered,
reiterating that facts should be set forth in the § 2255 motion itself rather than in a
lengthy memorandum, and that additional pages could be attached to the form if
necessary.  Doc. 57, pp. 1-2.  He was advised that the court would not reconsider
claims disposed of on appeal, and advised that he must allege error and prejudice in
support of an ineffective assistance of counsel claim.  *Id.*, pp. 2-3 (citing <u>Nyhuis</u> and
<u>Strickland</u>, other citation omitted).  Defendant did not object to this order, but filed the
second amended motion, and the court directed the Government to respond.  Doc. 59.

5:00 A.M.; the person who initially called the hotline; and Theodore Comstock and the three other participants in the burglary of Defendant's trailer.  *Id.*, p. 50 (p. 95).  He said that "in all probability" the witnesses "would have seriously added to the facts" and would have "had a substantial bearing" on the outcome.  *Id.*  "Even calling a few of the more important witnesses," Defendant claimed, would have made a substantial difference in the outcome of this case.  *Id.*

To show prejudice, "[i]t is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding."  Strickland, 466 U.S. at 693, 104 S.Ct. at 2067; Sullivan v. Deloach, 459 F.3d 1097 (11th Cir. 2006) (*pet. for cert. filed* December 29, 2006) (citation omitted).

> Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because "often allegations of what a witness would have testified to are largely speculative."

Sullivan, 459 F.3d at 1099, *citing* United States v. Guerra, 628 F.2d 410, 413 (5th Cir.1980), *cert. denied*, 450 U.S. 934 (1981) (other citation and footnote omitted).[7]  *See also* Johnson v. Alabama, 256 F.3d 1156, 1186-87 (11th Cir. 2001), *cert. denied*, 535 U.S. 926 (2002) (claim that witness could have been discredited by testimony of people at the motel was unsupported by evidence that any of the individuals present would

---

[7] The full statement in Guerra, was that "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  628 F.2d at 413 (citation omitted).  The court noted that "[n]one of the alleged witnesses were called at the s 2255 hearing and no one knows what they would have testified to.  All we have is what Guerra says they would have said."  *Id.*  In the case at bar, Defendant Davis has not even alleged what each witness would have said.

have testified in a way inconsistent with the testimony of the witness; "[t]his kind of
speculation is 'insufficient to carry the burden of a habeas corpus petitioner.' ") (citation
omitted).  Defendant has not set forth what these witnesses would have said, and has
neither shown attorney error nor prejudice to the outcome.

Defendant also claims that counsel failed to refute meritless contentions of the
Government and the court.  He argues that her summations and arguments were
incompetent, she failed to present claims adequately, and she allowed the Government
to knowingly use perjured testimony.  Memo., pp. 51-52 (pp. 96-97).  He claims counsel
failed to object to actions of the court, including:  findings that were clearly erroneous;
misstatements of the law and testimony; expression by the judge of personal beliefs or
opinions; the stressing of irrelevant issues or facts; expression of erroneous standards
or made up situations clearly different from the facts; and improper summations.  *Id.*, p.
52.

Most of this is unsupported.  Since the list was allegedly so "extensive" and
"would take numerous pages since there are so many [occurrences] of each item,"
Defendant gave only a few specific "examples" of alleged ineffectiveness in the
memorandum.  *Id.*  First, Defendant references the court's inquiry regarding neighbor's
reports, and argues that counsel should have refuted statements made by the court.
*Id.*, pp. 52-53 (pp. 97-98), *citing* doc. 42, p. 123.  He claims that the "neighbor's
testimony would have cleared up any discrepancies," as the court said "it is not a
'reliable indication,' but if the facts show that, what other information is reliable?"  Memo,
p. 53 (p. 98).

Defendant's point is not entirely clear because he does not set forth what the neighbor would have said.  Further, Defendant takes this statement out of context.  The court asked defense counsel a number of questions.  She argued that everything the officers observed and discovered at the scene was inconsistent with the report that a child was in danger.  Doc. 42, pp. 118-119.  They were told at the scene that the girl arrived alone by taxi, suggesting she was free to leave and was alone.  *Id.*  Counsel said a neighbor said Defendant left at 5:00 a.m. and officers did not see his truck there. *Id.*, p. 119.  The court asked whether the DCFS should still be concerned that a 15 year old "has voluntarily chosen to live with a 35-year-old man, to smoke dope and have sex, and her mother has decided not to worry about it."  *Id.*  Counsel responded that even if there was concern for the well being of a child, there was no need for immediate "kick-down-the-door entry into the dwelling" as he was not there and there was no threat.  *Id.*, p. 120.  The court thought at some point the DCFS would want to find out, and should not have to enter without law enforcement.  *Id.*, pp. 120-121.  Counsel repeated that the officers had other choices besides entering, as they could have contacted the mother, conducted surveillance of the premises, waited for the girl to leave, or waited for Defendant to return.  *Id.*, p. 122.  She repeated that the girl arrived by cab and gained entry, either through the window or by walking past the dog,[8] all suggesting she was there voluntarily.  *Id.*  When the court asked how they could be sure that Defendant was not there, counsel repeated the chronology of events which, she argued, so indicated,

---

[8] There was a door that had no padlock on the north side of the trailer and a pit bull was tied to the steps with a ten foot piece of rope.  *Id.*, p. 9.

and the court said "that's not a terribly reliable indication that she arrived while he was

gone." *Id.*, p. 123.  Counsel responded:

> I interpret it differently, but I understand what you're saying.  I think the
> other important factor, Your Honor, is the notation that the neighbor said
> she appears to be there of her own free will.  And I know I went to a lot of
> trouble getting these photographs and stuff, but I wanted you to see how
> close these trailers are to one another and how easy it is for the neighbors
> to see what's going on.
>
> And there's no evidence at all gathered by Children and Family Services,
> or anybody, that they've ever seen him with a weapon or seen him
> harming this child or seen him forcing her into the residence.  All they say
> is, "We saw her get dropped off by a cab and we think she's still home."

*Id.*, pp. 123-124.  Error of counsel is not evident in this exchange.

Defendant also cites the court's "explanation of his denial" of the motion to

suppress, claiming it shows counsel "clearly incompetent" as she should have objected.

Memo, p. 53 (p. 98), citing doc. 42, pp. 130-142.  Defendant does not cite the specific

matters to which counsel should have objected.  Moreover, objections were not

appropriate at that point in the hearing.  The court returned from recess and announced,

"I deny the motion to suppress and I'll explain the reasons." Doc. 42, p. 130.  The

arguments had already been made.  A conditional plea was entered so that Defendant

could challenge the ruling on appeal, which he did.

Defendant claims counsel should have brought unidentified allegedly perjured

testimony to the attention of the court, and should have presented evidence discrediting

such perjured testimony.  Doc. 58, p. 4(I).  Defendant references his rejected

memorandum of law as citing the untruthful testimony.  *Id.*  There Defendant gives an

"example" of perjured testimony "which would have been quite easy" to prove had

counsel made an objection.  Memo p. 53 (p. 98), citing doc. 42, p. 53.  Defendant claims

Detective Lock's testimony that he did not have to open the ammunition pouch to see what was inside could easily have been proven false by displaying the pouch itself. Memo, pp. 53-54 (pp. 98-99).

Officer Lock said that Officer Pate "relayed to him" that, in the initial sweep of the trailer, he observed an ammunition pouch or bag next to the bed, and it appeared to contain magazines of what appeared to be AK-47 rounds.  Doc. 42, pp. 44, 52.  Lock himself did not observe the ammunition in the initial entry.  Pate observed it and advised Lock.  *Id.*, pp. 52, 60.  Lock said the ammunition was within a magazine, which was within the pouch.  *Id.*, p. 53.  He said he ultimately saw the pouch, and said that "[y]ou were able to see that the actual pouch contained magazines that had what appeared to be AK-47 rounds in them."  *Id.*, p. 53.  Lock was also shown Government exhibits 6 and 7 and pointed to the ammunition pouch he was talking about, which he said was a belt with pouches on it.  *Id.*, pp. 58-59.

Officer Pitts testified that he went in the trailer with Pate and Lock in the initial entry, and he observed ammunition near the bed during the sweep.  Doc. 42, pp. 12, 14, see also p. 29 (explaining on cross examination that he saw ammunition on the floor in a clip.  He identified Government exhibits 6 and 7, photographs representing "the clips and holders for the ammo for the weapon," and the ammunition.  *Id.*, p. 16.  The photographs remain in the record as the sealed exhibits to the hearing.

Thus, photographs of the pouch and ammunition were before the court as exhibits, contrary to Defendant's claim.  Moreover, Pitts observed an ammunition clip on the floor during the sweep.  Lock did not see the ammunition during the initial sweep. He saw it later.  He identified the pouch in photographs which were introduced as

evidence.  Whether or not the magazine was visible inside the pouch when he saw it was hardly critical, and counsel did not act unreasonably in failing to pursue the matter further.  *See* Johnson, 256 F.3d at 1186 (counsel's failure to conduct additional cross examination on inconsequential matters does not establish deficient performance) (citation omitted).  Impeaching his testimony on evidence which he did not view during the initial sweep would not have caused the court to reject his testimony.

Defendant points to an alleged misstatement of law by the court that counsel should have corrected, again giving an "example."  Memo, p. 54 (p. 99).  "For example, the judge made misstatements of law that counsel should have corrected," quoting the court's statement that "obviously that standard is similar to the standard that applies to police entries to look for evidence, but it is a different situation."  *Id.*, *quoting* (with added emphasis) doc. 42, p. 132.  Defendant claims it was not a different situation because the police were there to investigate a crime, and the fact of the emergency "does not negate that there is a crime in progress."  *Id.*, pp. 54-55 (pp. 99-100).  He asserts that police thought they were "looking for evidence that a girl was being held against her will and being repeatedly raped – evidence that a crime was taking place or evidence of a crime – a girl, bound and gagged, or tied up with a man over her with a gun."  *Id.*, p. 55 (p. 100).  Since this clearly is a crime, Defendant argues, counsel should have objected to the court's statements as to no allegation of a crime.  *Id.*, pp. 55-56 (pp. 100-101).

The court's comment about "the standard" was to distinguish between the kind of emergency that permits entry without a warrant to protect someone from harm and the kind of exigency that permits entry without a warrant where there is probable cause to

search for evidence of a crime.  Doc. 42, p. 132.  Counsel had no objection to make as to the court's comments.

Further, the premise of this claim is wrong.  An officer's belief that a crime had been or was being committed does not negate his ability to respond to a safety emergency without a warrant.  "[W]hen exigent circumstances demand an immediate response, particularly where there is danger to human life, protection of the public becomes paramount and can justify a limited, warrantless intrusion into the home." United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002).[9]  "One of the most compelling events giving rise to exigent circumstances is the occurrence of an emergency situation."  *Id.*, at 1335.  A review of the cases addressing emergency situations, as collected in Holloway, reveals that most also involved at least the possibility of criminal activity.  *Id.*, at 1335-37.  In an emergency situation, "as with any other situation falling within the exigent circumstances exception [to the warrant requirement], the Government must demonstrate both exigency and probable cause." 290 F.3d at 1337 (citations omitted).  Typically, probable cause exists where it is reasonably believed that a search will uncover evidence of a crime.  *Id.*, at 1337 (citation omitted).  "In emergencies, however, law enforcement officers are not motivated by an expectation of seizing evidence of a crime.  Rather, the officers are compelled to search by a desire to locate victims and the need to ensure their own safety and that of the public."  *Id.*, at 1337-38 (collecting cases).  "Thus, in an emergency, the probable cause element may be satisfied where officers reasonably

---

[9] Holloway was discussed in the opinion on Defendant's appeal.  Doc. 61-2, pp. 5-9.

Case Nos. 5:01cr15-RH and 5:04cv249-RH/WCS

believe a person is in danger."  *Id.*, at 1338 (collecting cases).  *See also* United States

v. McGough, 412 F.3d 1232, 1237-39 (assuming, but not deciding, that the community

care-taking function of police officers could justify an exception to the warrant

requirement, but finding the circumstances of that case did not justify application of the

exception).  Defendant has not shown attorney error here.

Defendant claims appellate counsel was ineffective for failing to raise trial

counsel's ineffectiveness on appeal, and failing to raise "substantial issues."  Doc. 58,

pp. 4(H) -4(I) (also citing doc. 52).  The issues appellate counsel should have raised as

identified in the memorandum are those which Defendant claims trial counsel should

have argued but did not.  Memo, pp. 55-56 (pp. 100-101).  There is no error or prejudice

in omitting ineffective assistance of trial counsel claims on direct appeal, as such claims

are more appropriately raised by postconviction motion.  *See* Massaro v. United States,

538 U.S. 500, 504, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003) (finding the "better-

reasoned approach is to permit ineffective-assistance claims to be brought in the first

instance in a timely motion in the district court under § 2255," and holding that such

claims "may be brought in a collateral proceeding under § 2255, whether or not the

petitioner could have raised the claim on direct appeal.").

In summary, neither attorney error nor prejudice to the outcome has been shown.

Ground six is without merit.

**Ground seven, sentencing error**

In ground seven, Defendant claims his sentence was unconstitutionally enhanced

due to a detainer out of Maryland that was not proven beyond a reasonable doubt.  Doc.

58, pp. 4(I)-4(J).  Defendant claims that he challenged the use of the detainer on

appeal, but the ruling should be revisited in light of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as extended in <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and <u>United States v. Booker</u>, 543 U.S. 200, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[10]  Defendant asks for appointment of counsel to argue this claim, as it is a complex and rapidly evolving issue. *Id.*, p. 4(J).

As asserted by the Government, <u>Blakely</u> and <u>Booker</u> do not apply retroactively on collateral review.  Doc. 61-1, p. 8.  *See* <u>Varela v. United States</u>, 400 F.3d 864, 867 (11th Cir.), *cert. denied,* ___ U.S. ___, 126 S.Ct. 312 (2005) (<u>Blakely</u> and <u>Booker</u> do not apply retroactively on collateral review); and <u>In re Anderson</u>, 396 F.3d 1336, 1339-40 (11th Cir. 2005) (rule recognized in <u>Blakely</u> and <u>Booker</u> has not been "made retroactive to cases on collateral review by the Supreme Court" for purposes of authorizing a second or successive motion under § 2255).[11]  It is noted that the Supreme Court recently granted certiorari to decide whether <u>Blakely</u> announced a new rule and whether it applied retroactively on collateral review, but found it lacked jurisdiction to decide the

---

[10] In <u>Apprendi</u>, the Court "confirm[ed] the opinion that we expressed in *Jones*.  Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63.  The Court in <u>Blakely</u> applied <u>Apprendi</u> to a sentence enhanced under state sentencing guidelines, explaining the term "statutory maximum," and in <u>Booker</u>, 543 U.S. 200, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) applied <u>Blakely</u> to the Federal Sentencing Guidelines.

[11] This is not inconsistent with the statement, made *supra*, that a claim raised on appeal is not barred from consideration by the trial court by law of the case doctrine if there has been an intervening change of law.  *See* <u>Lang v. United States</u>, __ F.3d __, 2007 WL 162689 (6th Cir. January 24, 2007) (<u>Davis</u> is consistent with the rule against retroactive application on collateral review if <u>Davis</u> is limited to substantive conduct, as opposed to procedural rules) (citations omitted).

question.  Burton v. Stewart, __ U.S. __, 127 S.Ct. 793, 794 (January 9, 2007).  Ground

seven, therefore, is without merit.

**Recommendation**

It is therefore respectfully **RECOMMENDED** that Defendant's second amended §

2255 motion, doc. 58, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on February 26, 2007.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**